UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JAMES CATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:02-CV-611 |
| | ) | (Phillips) |
| CITY OF ROCKWOOD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This is a civil rights action pursuant to 42 U.S.C. § 1983 by a former public employee of the City of Rockwood and the Rockwood Water, Waste Water and Natural Gas System, challenging the constitutionality of the elimination of his position and his dismissal from employment in violation of his free speech rights guaranteed by the First and Fourteenth Amendments to the United States Constitution and Article I, § 19 of the Constitution of the State of Tennessee. Defendants have moved for summary judgment on plaintiff's claims. For the reasons which follow, the defendant's motion will be granted in part and denied in part.

### Background

The following facts will be taken in a light most favorable to the plaintiff: James Cate was hired by the Rockwood Water, Waste Water and Natural Gas System (the Board) in February 1993. Cate worked in the Water Department doing water taps, laying

lines and repairing lines until he had heart surgery in 1997. After filing a grievance in 1998, Cate was given the job of performing "dead end blow offs" (flushing). This position was less physically demanding and less stressful than Cate's previous position.

On or about September 2001, Cate suspected that a cub tractor owned by the City of Rockwood had been stolen. Cate inquired about the tractor when a former superintendent of the Water Department, who was interested in buying the tractor, told Cate that he attended the surplus sale to buy the tractor, but the tractor was not at the sale. Soon after this, Cate had lunch with Rockwood Mayor, Michael Miller. Cate asked Mayor Miller if he knew where the tractor had been taken. Cate suspected that a fellow employee, Benton Smith, had taken the tractor. Cate asked his supervisor, Jimmy Boles, about the location of the tractor. Boles informed Cate that the tractor had been taken to the junkyard. After work, Cate went to the junkyard to confirm the information he was given by Boles, and he was informed by junkyard personnel that the tractor had been brought to the junkyard by Benton Smith, who had decided after arriving to keep the tractor. Within a week, Cate was contacted by Bill Stinnett with the Rockwood Police Department and asked some questions about the missing tractor. Cate told Stinnett that Boles had said he had scrapped the tractor at the junkyard, but that it was not true.

On October 29, 2001, the Board called a meeting to consider the actions of Boles and Benton Smith. It was decided that both men would be suspended for thirty days without pay. After deciding to suspend Boles and Smith, John Neal, Chairman of the

Board, met with utility supervisors Jerry Hagler, John Sigmore, and Jimmy Boles, to discuss how to cover the absences of Smith and Boles. Hagler chose Cate to fill in on the sewer crew for Smith. It was further decided that the dead end blow offs would have to become the shared responsibility of everyone. The next day when Cate went to work, people at the utility ignored him and acted like he did not exist.

Don Brasel was at the Board meeting on October 29, 2001, when Smith and Boles were given thirty day suspensions. He heard Boles say, "There wouldn't have been nothing to this if big mouth had kept his mouth shut." Brasel later found out that Boles was referring to Cate.

Following the meeting, Boles told Cate that he would take Smith's place at the sewer plant while Smith was on a thirty day suspension. Cate told Boles that this was retaliation because of the tractor. Boles said to Cate, "I will get you for this." Cate talked with Mayor Miller about his reassignment to the sewer plant. Cate told Mayor Miller that he did not think Boles could reassign him because he had gotten the flushing job through Board settlement of a grievance. Mayor Miller told Cate that he did not know the status of the reassignment, but that he would find out for him. Mayor Miller later called Cate and told him the Board had voted to do away with his job and he would do as he was told. Cate felt that he could not do the heavy physical work of digging, lifting, and shoveling required at the sewer plant. In addition, on the flushing job, Cate had been exempt from night calls and weekend duty.

Cate took a week's vacation and during that time, went to his doctor and was given a thirty day medical leave on November 7, 2001. Cate returned to work on December 18, 2002, and worked for approximately eight days performing various duties, including flushing. After eight days, Cate returned to his doctor and asked for thirty additional days of medical leave on January 3, 2002. On February 11, 2002, Cate's medical leave was once again extended for thirty days.

Rodney King was hired by the Board as the new Operations Manager in January 2002. On several occasions, King tried to contact Cate, but all of his attempts were unsuccessful. Shortly after King became manager of the Utility, he spoke with Calvin Trew, a member of the Rockwood City Council. King told Trew that Cate was a troublemaker and that he could not put anyone to work with Cate because no one would work with him. Several weeks later, King told Trew that he had found a technicality to get rid of Cate. Cate's thirty day medical leave starting February 11, 2002 expired on March 13, 2002. Cate had not returned to work by March 20, 2002, and no other leave of absence had been requested by Cate. King asked Neal to write a letter to Cate stating that since his leave of absence had expired and he had not returned to work, he had abandoned his job. On March 20, 2002, Cate received a registered letter stating that he had voluntarily quit his job. Cate believed that he was still on medical leave. No one from the Utility contacted Cate before sending him the termination letter. No one ever told Cate that his medical leave was over or that he needed to return to work. Cate took his termination letter to his doctor, who sent the Utility an explanation that he had extended

-4-

Cate's medical leave for thirty "working" days, not thirty "calendar" days. Cate then filed a grievance. The grievance was first denied by the Board and then by the Civil Service Committee.

Plaintiff, James Cate, has sued defendants for violation of his civil rights under 42 U.S.C. § 1983, arising from his termination by the Board. Additionally, Cate has sued the Board for violation of the Open Meetings Act, Tenn. Code Ann. § 8-44-101, for its decision to eliminate his position. Cate has also sued defendants for violation of the Tennessee public policy by retaliating against him for the exercise of his protected rights under both the United States and Tennessee Constitutions. Defendants have moved for summary judgment on all plaintiff's claims.

Analysis

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence

sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

Defendants have moved for summary judgment on the grounds that: (1) plaintiff's proof is insufficient as a matter of law to establish a First Amendment violation under 42 U.S.C. § 1983; (2) neither the City of Rockwood, nor its Mayor or Board Members, have violated the provisions of the Open Meetings Law, by allegedly eliminating plaintiff's position; (3) under the Tennessee Governmental Tort Liability Act, the City of Rockwood and the Board are immune from an action for either statutory or common law retaliatory discharge; (4) defendants Michael Miller, James Neal, Harold Isham, Carl Lehman, Glen Long, and Jack McGuire have no individual liability because plaintiff has failed to state a claim against them in their individual capacities; and (5) plaintiff has failed to state a claim for retaliatory discharge because he cannot show that he was discharged or that the reason for the discharge was that he attempted to exercise his Constitutional rights.

First Amendment Claim

First, defendants assert that plaintiff's proof is insufficient, as a matter of law, to establish a First Amendment violation under § 1983. For a public employee to succeed on a claim of retaliation in violation of the First Amendment, he must demonstrate that (1) he was engaged in constitutionally protected speech or activity, (2) the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity, and (3) the protected speech was a substantial or motivating factor in the adverse action. *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir. 2003); *Farhat v. Jopke,* 370 F.3d 580, 588 (6th Cir. 2004).

In determining the first element of the test, the court must ascertain whether the relevant speech addressed a matter of public concern. *See Connick v. Myers,* 461 U.S. 138 (1983). The parties do not dispute that Cate's statement to Officer Stinnett concerning the stolen tractor was a matter of public concern. However, defendants argue that Cate's inquiry of Mayor Miller as to the whereabouts of the tractor and his discussion with Boles concerning the tractor were not matters of public concern. The court disagrees. Clearly, a tractor stolen by city employees is a matter of public concern. *See Hudson v. Washington Co.,* 1993 WL 100093 (6th Cir. 1993) (Speech disclosing public corruption is a matter of public concern).

-7-

The second element of the analysis requires the court to ascertain whether the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity. Cate engaged in constitutionally protected activity when he investigated the whereabouts of the tractor owned by the City. The court finds that Cate was subjected to adverse action when he was transferred to the sewer plant, a job he could not physically perform; and he was also subjected to adverse action when he was terminated on March 20, 2002.

The third element requires that the protected speech was a "substantial" or "motivating factor" in the adverse action. In the instant case, after the Board meeting on October 29, 2001, at which Boles was suspended for thirty days for theft of the tractor, Boles, who was Cate's supervisor, told Cate that Cate would be transferred to the sewer plant. Boles stated at the Board meeting that "this wouldn't have amounted to anything if it weren't for Big Mouth," referring to Cate. Boles also told Cate that "he would get him." Boles transferred Cate to a job which he could not physically perform because of his heart condition. Based on these facts, a reasonable jury could conclude that Cate's communications about the missing tractor were a substantial or motivating factor behind the decision to transfer Cate to the sewer plant. An involuntary job transfer, where neither grade nor salary is affected, qualifies as adverse action for purposes of the First Amendment. *Leary,* 349 F.3d at 901.

-8-

Case 3:02-cv-00611   Document 61   Filed 04/27/06   Page 8 of 17   PageID #: 56

In addition, shortly after King became Operations Manager of the utility, he asked Councilman Trew for more details concerning the missing tractor. During that conversation, King told Trew that Cate was a troublemaker. King also told Trew that he had found a way to get rid of Cate on a technicality. A reasonable jury could conclude from these statements that Cate's investigation into the theft of the tractor was a substantial or motivating factor behind King's decision to consider Cate's failure to return to work as abandonment of his job, so King could terminate Cate. Retaliation by a government employer against an employee who exercises his First Amendment rights constitutes a First Amendment violation even if the employee could have been terminated for any reason. *Perry v. McGinnis,* 209 F.3d 597, 604 (6th Cir. 2000). Whether Cate's speech was a substantial or motivating factor in his transfer and termination involves a determination of fact that is reserved for the jury. Accordingly, defendants are not entitled to summary judgment on plaintiff's claim under the First Amendment.

<u>Violation of the Open Meetings Law</u>

Next, defendants argue that neither the City of Rockwood, nor its Mayor or Board members have violated the provisions of the Open Meetings Law, by allegedly eliminating Cate's position.

The Open Meetings Act, Tenn. Code Ann. § 8-44-102, provides that "all meetings of any governing body are declared to be public meetings open to the public at all times, except as provided by the Constitution of Tennessee." *Id.* In addition, the Act

defines a "governing body" as the "the members of any public body which consists of two (2) or more members, with the authority to make decisions for or recommendations to a public body on policy or administration . . . ." *Id.* The Act requires public notice of all regular or special meetings of a governmental body. Tenn. Code Ann. § 8-44-103. Further, secret meetings are prohibited, and minutes of the meetings are required. Tenn. Code Ann. § 8-44-104.

Defendants argue that there is no evidence that the Board voted to eliminate Cate's position at the Utility. Rather, after the decision was made to suspend Smith and Boles for thirty days, supervisors at the Utility met and decided that Cate would fill in on the sewer crew during Smith's suspension. However, Cate has presented evidence that the Board voted to eliminate his position in violation of the Open Meetings Act. Mayor Miller told Cate that the Board had eliminated his position. In addition, Cate was transferred to the sewer plant immediately after the October 29, 2001 board meeting.

In *Littleton v. City of Kingston,* 1990 WL 1098240 (Tenn.App. 1990), the court held that telephone calls and informal discussions among the mayor and council members about the plaintiff's position established a *prima facie* violation of the Open Meetings Act. Further, the Tennessee Supreme Court has held that a discriminatory decision made in violation of the Open Meetings Act could serve as the basis for a discrimination suit although the decision was later declared void for violation of the Open Meetings Act. *See Forbes v. Wilson Co. Emergency Dist. 911 Board,* 966 S.W.2d 417, 420 (Tenn. 1998). In

-10-

the instant case, Cate has presented evidence that the Board voted to eliminate his position immediately after the Board suspended Boles for theft of the tractor. Thus, there exists a question of fact as to whether a secret meeting took place or whether decisional conversations were held. The credibility of the witnesses on this issue is for the jury to determine. Accordingly, defendants are not entitled to summary judgment on plaintiff's claim for violation of the Open Meetings Act.

### Governmental Tort Liability Act

Defendants next argue that under the Governmental Tort Liability Act (GTLA), the City of Rockwood and the Board are immune from an action for either statutory or common law retaliatory discharge. The City of Rockwood is a municipality organized under the laws of the State of Tennessee and, as such, is a governmental entity subject to the protections of immunity under the GTLA. Likewise, the Board governs a municipal utility which operates public works for the City of Rockwood, and as such, is entitled to the immunity protections of the GTLA.

Although Tennessee courts have previously held that the GTLA did not remove the immunity of governmental entities as to retaliatory discharge claims[1], in 1997, Tenn. Code Ann. § 50-1-304 (the Whistlebower Statute) was amended to extend its protection, and the cause of action based on it, to public employees. That change was

---

[1] *See Montgomery v. Covington,* 778 S.W.2d 444, 445 (Tenn.App. 1988); *Williams v. Williamson Co. Bd. Of Ed.,* 890 S.W.2d 788, 790 (Tenn.App. 1994).

-11-

accomplished by including in the definition of employer, "the state, or any municipality, county, department, board, commission, agency, instrumentality, political subdivision or any other entity thereof." *Id.* At the time of the alleged retaliatory transfer and alleged retaliatory discharge of plaintiff, public employees in Tennessee, including employees of municipalities, clearly had protection under Tennessee's common law and statutory whistleblower provisions. Accordingly, defendants are not entitled to immunity under the GTLA on plaintiff's claim for retaliatory discharge.

### Retaliatory Discharge

Defendants next argue that plaintiff has failed to state a claim for statutory or common law retaliatory discharge because Cate cannot show that he was discharged or that the reason for the discharge was that he attempted to exercise his constitutional rights. In order to succeed on a common law retaliatory discharge cause of action, plaintiff must demonstrate that his whistle-blowing activity was a substantial factor in his termination. *Guy v. Mutual of Omaha Ins. Co.,* 79 S.W.3d 528, 531 (Tenn. 2002). The common law cause of action requires proof of (1) an employment at will relationship, (2) discharge of the employee, (3) the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision, and (4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy. *Crews v. Buckman Labs Int'l,* 78 S.W.3d 852, 862 (Tenn. 2002).

-12-

Construing the evidence in a light most favorable to plaintiff, the court finds that he has established that he was discharged by defendants. As stated above, a reasonable jury could conclude that Cate's communications about the missing tractor were a substantial motivating factor behind the decision to consider his failure to return to work as abandonment of his job. Thus, Cate has met all the elements of a *prima facie* claim for common law retaliatory discharge. Accordingly, defendants are not entitled to summary judgment on this claim.

### Individual Liability of the Defendants

Defendants, Michael Miller, James Neal, Harold Ishman, Carl Lehman, Glen Long, and Jack McGuire argue that Cate cannot establish a claim of retaliatory discharge against them in their individual capacities because they were not Cate's employer. The Tennessee Whistleblower Act, Tenn. Code Ann. § 50-1-304, defines "Employer" as "the state, or any municipality, county, department, board, commission, agency, instrumentality, political subdivision, or any other entity thereof." Tenn. Code Ann. § 50-1-304(g)(2). Tennessee courts have explicitly held that supervisors, even if they have the exclusive authority to hire and fire employees, are not employers under the Act. *Baines v. Wilson Co.,* 86 S.W.3d 575, 582 (Tenn.App. 2002). Accordingly, summary judgment will be granted to Miller, Neal, Ishman, Lehman, Long and McGuire on plaintiff's claim for retaliatory discharge under the Tennessee statute and common law against them individually. However, these defendants are still subject to individual liability for the intentional violation of Cate's constitutional rights under the First and Fourteenth

-13-

Amendments of the United States Constitution. The court will next examine whether these defendants are entitled to qualified immunity for plaintiff's constitutional claims.

### Qualified Immunity

The individual defendants assert they are entitled to qualified immunity as to Cate's constitutional claims. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability, and, like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." The court, when ruling on a qualified immunity issue, must consider whether, taken in a light most favorable to the party asserting injury, the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). If no constitutional right would have been violated were the allegation established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next step is to ask whether the right was clearly established. The contours of the right must be sufficiently clear such that the reasonable official would understand that what he is doing violated that right. *Graham v. Connor,* 483 U.S. 635, 640 (1987). The relevant, dispositive inquiry in determining whether a right is clearly established is whether the official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff, or if he took the action with the malicious intent to cause a deprivation of constitutional rights. *See Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982).

If the law did not put the official on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Maley v. Briggs,* 475 U.S. 335, 341 (1986).

Cate has alleged that he was transferred and later terminated in retaliation for his communications regarding the stolen tractor in violation of his free speech rights under the First Amendment. This a clearly established right of which a reasonable official would know. *Graham,* 490 U.S. at 392-93; *California v. Hodari,* 499 U.S. 621, 624-25 (1991).

The court has found that Cate has presented sufficient evidence of retaliation with respect to his transfer and termination such that a jury could find in Cate's favor on this issue. Plaintiff had a clear right not to be terminated from his position in retaliation for reporting government corruption. Thus, if the circumstances were such that Cate's transfer and termination were not justified by legitimate business reasons, then a jury could find he was transferred and terminated as a result of retaliation.

Summary judgment is not appropriate if there are factual disputes involving an issue on which the question of immunity turns, "such that it cannot be determined

-15-

before trial whether the defendant did acts that violate clearly established rights." *Pray v. City of Sandusky,* 49 F.3d 1154 (6th Cir. 1995). As stated by the Sixth Circuit, many times "the jury becomes the final arbiter of [defendants'] claim of immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury." *Id., see also Brandenburg v. Cureton,* 882 F.2d 211, 215-16 (6th Cir. 1989). It is for the trier of fact, not the court, to determine whether Cate can establish that his transfer and termination were the result of retaliation. Accordingly, defendants' motion for summary judgment on the basis of qualified immunity will be denied.

Conclusion

For the reasons stated above, defendants' motion for summary judgment [Doc. 20] is **GRANTED IN PART AND DENIED IN PART.** Judgment is **GRANTED** to defendants Michael Miller, James Neal, Harold Isham, Carl Lehman, Glen Long and Jack McGuire in their individual capacities on plaintiff's claim for retaliatory discharge under the Tennessee statutory and common law. The individual defendants' motion for summary judgment is **DENIED** as to plaintiff's claims for violation of his constitutional rights under the First and Fourteenth Amendments of the United States Constitution. The City of Rockwood and the Rockwood Water, Waste Water and Natural Gas Board's motion for summary judgment is **DENIED** in all respects. The parties will prepare the case for trial.

**ENTER:**

<u>    s/ Thomas W. Phillips    </u>
United States District Judge